IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Trademark Rightsholder Identified in Exhibit 1, <br> Plaintiff, <br> v. <br> The Partnerships, and Unincorporated Associations Identified on Schedule A, <br> Defendants | ) <br> ) <br> ) 1:25-cv-04242 <br> ) <br> ) <br> ) <br> ) <br> ) |

## Complaint

**NOW COMES** Trademark Rightsholder Identified in Exhibit 1 ("Plaintiff"), by and through its undesigned counsel and hereby brings its case against the Partnerships, and Unincorporated Associations Identified on Schedule A attached hereto (collectively, "Defendants"), and alleges as follows:

### Introduction

1. This action has been filed by Plaintiff to combat online trademark infringers who trade upon Plaintiff's commercial reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed hair and nail care products.

2. Defendants have traded and continue to trade upon Plaintiff's commercial reputation and goodwill by offering for sale and/or selling unlicensed products under Plaintiff's registered trademark ("Infringing Products") to consumers within the United States, including the State of Illinois and this Judicial District.

3. Defendants create fully interactive, commercial Internet stores operating under at least the online marketplace accounts identified in **Schedule A,** attached hereto (collectively, the "Defendant Online Stores") and are intentionally designed to appear to be selling genuine

products sourced from Plaintiff, while actually selling the Infringing Products to unknowing consumers.

4. The Defendant Online Stores share identifiers, coincident product titling, identical product photos, and design elements and similarities of the Infringing Products offered for sale, establishing a logical relationship between them and supporting the notion that Defendants' infringing operation arises out of the same transaction, occurrence, or series of transactions or occurrences among interrelated parties.

5. Defendants attempt to avoid liability by going to lengths to conceal both their identities and the full scope and interworking of their infringing operation. Plaintiff is forced to file this action to combat Defendants' unauthorized use of Plaintiff's registered trademarks (the "Plaintiff Mark"), as well as to protect unknowing consumers from purchasing unauthorized products over the Internet. True and correct copies of the U.S. registrations for the Plaintiff Mark and notice of recordation of assignments of the U.S. registrations for the Plaintiff Mark to Plaintiff is attached hereto as **Exhibit 1**.

6. Plaintiff has been and continues to be irreparably damaged through consumer confusion and the infringement of the Plaintiff Mark as a result of Defendants' actions and accordingly seeks injunctive and monetary relief.

**Jurisdiction and Venue**

7. This Court has original subject matter jurisdiction over the claims in this action pursuant to 15 U.S.C. § 1051, *et seq.*, and 28 U.S.C. §§ 1331, 1338(a)-(b).

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because each Defendant directly targets its business activities toward consumers in the United States, including Illinois and this Judicial District. Defendants reach out to do business with residents of Illinois and this Judicial District by

operating one or more commercial, fully-interactive Defendant Online Stores through which residents of Illinois and this Judicial District can purchase and/or have purchased products being offered and sold under the Plaintiff Mark. Each Defendant has targeted sales from residents of Illinois and this Judicial District by operating a Defendant Online store that accepts payment in U.S. dollars, offered shipping to addresses within Illinois and this Judicial District for products offered using spurious versions of the Plaintiff Mark, and has shipped or offered and was prepared to ship products into this Judicial District. Each Defendant has committed and is committing tortious acts in Illinois and this Judicial District, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## Parties

9. Plaintiff is a Chinese private company that specializes in the creation, manufacture, marketing, and sale of consumer housewares and other products through Plaintiff's business.

10. Plaintiff has invested substantial resources, time, money, and commercial efforts in order to establish the goodwill of Plaintiff's products and the Plaintiff Mark. The success of Plaintiff's business enterprise is dependent and a result of its effort to marketing, promoting, and advertising online via e-commerce.

11. Plaintiff's federal registrations for the Plaintiff Mark are valid, subsisting, and in full force and effect.

12. The Plaintiff Mark continuously was used in connection with the sale, distribution, promotion, and advertising of genuine Plaintiff products, and consumers associate the Plaintiff Mark with Plaintiff and its authorized products.

13. Genuine Plaintiff products have become very popular, driven by Plaintiff's elevated quality standards and innovative designs.

14. Genuine Plaintiff products have been distributed, promoted and sold through distributors throughout the world, including the United States and on AliBaba.com. Plaintiff's sales of authorized Plaintiff products have been substantial.

15. As a result of Plaintiff's long-standing use of the Plaintiff Mark in association with Plaintiff's high-quality products, extensive sales, and significant marketing activities, the Plaintiff Mark has achieved widespread acceptance and recognition among the consuming public and throughout U.S. interstate commerce.

16. Plaintiff has invested substantial resources, time, money, and commercial efforts in order to establish the goodwill of the Plaintiff products. The success of Plaintiff's business enterprise is dependent and a result of its effort to marketing and advertising online via e-commerce.

17. The success of Plaintiff's products additionally stems from sales to consumers and interest that its consumers have generated.

18. As a result of the efforts of Plaintiff, the quality of Plaintiff's products, the promotional efforts for its products and designs, the members of the public have become familiar with Plaintiff's products and the Plaintiff Mark, and associate them exclusively with Plaintiff.

19. Plaintiff has made efforts to protect its interests in and to the Plaintiff Mark. Plaintiff's is the only business authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the Plaintiff Mark. On information and belief, Plaintiff has not licensed or authorized Defendants to exploit the Plaintiff Mark in any way.

20. Defendants are individuals and business entities who, upon information and belief, predominantly reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive Defendant Online Stores which operate on commercial online marketplaces. Each Defendant targets the United States,

including Illinois and this Judicial District, and has offered to sell and, on information and belief, has sold and continues to sell Infringing Products to consumers within the United States, including the State of Illinois and this Judicial District.

21. On information and belief, Defendants are an interrelated group of infringers working in concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using unauthorized versions of the Plaintiff Mark in the same transaction, occurrence, or series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their infringing operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their infringing network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend this Complaint.

## Defendant's Unlawful Conduct

22. Marketplaces like Walmart, among others, allow merchants to quickly "set up shop" and flood the market with unauthorized goods which displace actual sales manufacturers would otherwise enjoy.

23. It has been estimated that e-commerce intellectual property infringement costs merchants in the U.S. alone nearly $41 billion[1] with Department of Homeland Security seizures of infringing goods increasing more than 10-fold between 2000 and 2018[2] and a street value of seized goods increasing 246% from 2017 to 2022.[3]

---

[1] The National Bureau of Asian Research, The Report of the Commission on the Theft of American Intellectual Property, at 9, Pub. The Commission on the Theft of American Intellectual Property 2017, available at http://www.ipcommission.org/report/IP_Commission_Report_Update_2017.pdf.

[2] U.S. Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods Report to the President of the United States*, January 24, 2020.

[3] U.S. Customs and Border Protection Office of Trade, FY 2022 Fact Sheet Intellectual Property Rights, available at https://www.cbp.gov/sites/default/files/assets/documents/2023-Mar/IPR%20Fact%20Sheet%20FY2022%20Final%20Draft%20%28508%29%20%28004%29%20%282%29.pdf

24. U.S. Customs and Border Protection ("CBP") reported that for Fiscal Year 2023, it seized nearly 23 million counterfeit goods with a collective manufacturer's suggested retail price of over $2.7 billion (USD), with 46% of those seizures and 84% of the value coming from China and Hong Kong[4]

25. CBP reported that for Fiscal Year 2019, 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large cargo containers) and 85% of CBP seizures originated from mainland China, Singapore, and Hong Kong.[5]

26. Legislation was recently introduced in the U.S. Senate that would allow CBP to seize articles that infringe design patents, thus closing a loophole currently exploited by infringers.[6]

27. Infringing and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

28. Third party service providers like those used by Defendants do not robustly subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[7]

29. DHS has observed that "at least some e-commerce platforms, little identifying information is necessary for [an infringer] to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Infringers hedge against the risk of being caught and

---

[4] U.S. Customs and Border Protection FY 2023 FACT SHEET Intellectial Property rights, avaiablle at https://www.cbp.gov/sites/default/files/2024-05/IPR%20FACT%20SHEET%20FISCAL%20YEAR%202023%20PBRB%20APPROVED%20%28508%29_5.29.pdf

[5] U.S. Customs and Border Protection Office of Trade, Intellectual Property Rights Fiscal Year 2019 Seizure Statistics, available at, https://www.cbp.gov/sites/default/files/assets/documents/2020-Sep/FY%202019%20IPR%20Statistics%20Book%20%28Final%29.pdf.

[6] Press Release, U.S. Senator Thom Tillis, Tillis, Coons, Cassidy & Hirono Introduce Bipartisan Legislation to Seize Counterfeit Products and Protect American Consumers and Businesses (Dec. 5, 2019).

[7] Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020).

having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual storefronts.[8]

30. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated.[9]

31. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of [infringement]."[10]

32. The success of Plaintiff's sales of the Plaintiff Product has resulted in substantial infringing activity and other attempts to misappropriate Plaintiff's proprietary rights. Plaintiff has policed the use of its Plaintiff Mark and has identified certain online product listings on marketplaces such as Walmart, offering for sale and, on information and belief, selling products to consumers under unauthorized versions of the Plaintiff Mark throughout the United States including this Judicial District.

33. Defendants enable and facilitate sales of their infringing products with unauthorized versions of the Plaintiff Mark by presenting the Defendant Online Stores as legitimate resellers using standardized product listing layouts and terminology. On information and belief, Plaintiff has not licensed or authorized Defendants to use its Plaintiff Mark in any way, and none of the Defendants are authorized retailers of genuine Plaintiff Products.

34. Defendants uniformly use the same method to deceive unknowing consumers, namely, by including the Plaintiff Mark prominently above the product listing title, if not always the first word.

---

[8] *Combating Trafficking in Counterfeit and Pirated Goods Report to the President of the United States*, at p. 22.
[9] Id., at p. 39.
[10] *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. at 186-187.

35. Defendants take pains to conceal their identities from the public, almost invariably using meaningless store names and addresses which do not identify Defendants. Defendants may operate several stores simultaneously, using fictitious identities such as those listed in **Schedule A**, as well as other fictitious names and addresses. Moreover, infringers like Defendants will often register new store accounts under new fictitious names when they receive notice that one or more stores have been the subject of a lawsuit. The use of these store registration schemes is one of several ways in which Defendants, to avoid being shut down, conceal their true identities and the inner workings of their infringement operations.

36. Despite Defendants operating under multiple fictitious names, their stores bear numerous similarities. Infringing Products bear similar irregularities and indicia of being counterfeit to one another, which suggests that the products were manufactured and/or supplied by a common source and that the Defendants selling them are interrelated. Moreover, the Defendant Online Stores use other common means to sell the Infringing Products including, without limitation, using the same payment processors, obfuscated contact information, identically or similarly priced items, incorrect grammar and spellings within the product listings.

37. Infringers like Defendants will typically ship infringing products in small quantities via international mail to mitigate detection by U.S. Customs and Border Protection. Further, they will typically operate multiple credit card merchant accounts or use layers of payment gateways to forestall their cashflow being interrupted due to trademark enforcement efforts. On information and belief, Defendants utilize offshore bank accounts and routinely move funds from U.S.-based merchant accounts (*e.g.*, within China) outside the jurisdiction of this Court.

38. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the Plaintiff Mark in connection with the advertisement, distribution,

offering for sale, and sale of Infringing Products into the United States and into Illinois over the Internet.

39. Each Defendant offers shipping to the United States, including, specifically Illinois. On information and belief, each Defendant has offered to sell or sold Infringing Products into the United States and the state of Illinois.

40. Defendants' unauthorized use of the Plaintiff Mark in connection with the advertising, distribution, offering for sale, and sale of Infringing Products, including with respect to the sale of such products into the United States, including specifically Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## Count I - Trademark Infringement (15 U.S.C. § 1114)

41. Plaintiff repeats, re-alleges, and incorporates by reference the allegations set forth in Paragraphs 1 through 40.

42. Plaintiff's trademark infringement claims against Defendants are based on their unauthorized use in commerce of imitations of the federally-registered Plaintiff Mark in connection with the advertising, distribution, offering for sale, and sale of infringing goods.

43. The Plaintiff Mark is a distinctive mark, and consumers have come to expect superior quality from products advertised, distributed, offered, or sold under the Plaintiff Mark.

44. Defendants have advertised, distributed, offered to sell, sold, and are still advertising, distributing, offering to sell, and selling products using infringing reproductions of the Plaintiff Mark without Plaintiff's permission.

45. Plaintiff is the exclusive owner of the Plaintiff Mark. Plaintiff's registrations for the Plaintiff Mark are in full force and effect.

46. Upon information and belief, Defendants are aware and have knowledge of Plaintiff's rights in the Plaintiff Mark and are willfully infringing it and intentionally using infringing reproductions thereof.

47. Defendants' willful, intentional, and unauthorized use of the Plaintiff Mark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Infringing Products among the general public.

48. Defendants' activities constitute willful trademark infringement under 15 U.S.C. § 1114.

49. Plaintiff has no adequate remedy at all and will suffer irreparable harm to its reputation and goodwill of its well-known Plaintiff Mark if Defendants' actions are not enjoined.

50. Defendants' wrongful advertisement, offering to sell, and sale of Infringing Products have directly and proximately caused injuries and damage to Plaintiff.

**Count II - False Designation of Origin (15 U.S.C. § 1125(a))**

51. Plaintiff repeats, re-alleges, and incorporates by reference the allegations set forth in Paragraphs 1 through 50.

52. Defendants' advertising, distribution, offering for sale, and sale of Infringing Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Infringing Products by Plaintiff.

53. By using the Plaintiff Mark in association with the advertising, distribution, offering for sale, and sale of the Infringing Products, Defendants create a false designation of origin and a misleading representation of fact as to the true origin and sponsorship of the Infringing Products.

54. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Infringing Products to the general public involves the willful use of misleading marks and is a willful violation of 15 U.S.C. § 1125.

55. Plaintiff has no adequate remedy at all and will suffer irreparable harm to its reputation and goodwill of its well-known Plaintiff Mark if Defendants' actions are not enjoined.

**Count III - Violation of the Uniform Deceptive Trade Practices Act (815 ILCS § 510, et seq.)**

56. Plaintiff repeats, re-alleges, and incorporates by reference the allegations set forth in Paragraphs 1 through 55.

57. Defendants have engaged in acts which violate Illinois law including, without limitation: passing off their Infringing Products as those of Plaintiff; cause a likelihood of confusion and/or misunderstanding as to the source of their goods; causing a likelihood of confusion and/or misunderstanding as to the affiliation, connection, or association with genuine Plaintiff Products; representing that their products have Plaintiff's approval when they do not; and engaging in other conduct as described herein which creates a likelihood of confusion or misunderstanding among the public.

58. Defendants' foregoing acts constitute willful violations of the Illinois Uniform Deceptive Trademark Practices Act, 815 ILCS § 510, *et seq*.

59. Plaintiff has no adequate remedy at all and will suffer irreparable harm to its reputation and goodwill of its well-known Plaintiff Mark if Defendants' actions are not enjoined.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. Using the Plaintiff Mark or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising,

offering for sale, or sale of any product that is not a genuine Plaintiff Product or is not authorized by Plaintiff to be sold in connection with the Plaintiff Mark;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff Product or any other product produced by Plaintiff that is not Plaintiff's or is not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale using the Plaintiff Mark;

c. committing any acts calculated to cause consumers to believe that Defendants' Infringing Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d. further infringing the Plaintiff Mark and damaging Plaintiff's goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the Plaintiff Mark, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as Walmart, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, and Internet search engines such as Google, Bing and Yahoo (collectively, the "Third Party Providers") shall:

a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the Plaintiff Mark;

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit or infringing goods using the Plaintiff Mark; and

    c. take all steps necessary to prevent links to the Defendant Online Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Online Stores from any search index;

3) For Judgment in favor of Plaintiff against Defendants that they have: (i) willfully infringed Plaintiff's rights in its federally registered trademarks pursuant to 15 U.S.C. § 1114; and (ii) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

4) For Judgment in favor of Plaintiff against Defendants for actual damages or other available damages pursuant to 15 U.S.C. § 1117, at the election of Plaintiff, in an amount to be determined at trial;

5) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged;

6) That Plaintiff be awarded its reasonable attorneys' fees and costs under 15 U.S.C. § 1117(a), 815 ILCS § 510/3 as may be allowable;

7) Award any and all other relief that this Court deems just and proper.

Dated: April 17, 2025

                                                  Respectfully submitted,

                                                  /s/Adam E. Urbanczyk
                                                  Adam E. Urbanczyk
                                                  AU LLC
                                                  444 W. Lake St. 17th Floor
                                                  Chicago, IL 60606
                                                  (312) 715-7312
                                                  adamu@au-llc.com
                                                  *Counsel for Plaintiff*